UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTON PEREVOZNIKOV,

                      *Petitioner*,

     -against-

UNITED STATES,

                      *Respondent*.

20-CR-415 (ARR)

<u>NOT FOR ELECTRONIC
OR PRINT PUBLICATION</u>

**OPINION & ORDER**

ROSS, United States District Judge:

       Petitioner Anton Perevoznikov moves, pursuant to 28 U.S.C. § 2255, for an order vacating his judgment of conviction entered following his plea of guilty on one count of conspiracy against the United States, 18 U.S.C. § 371. Mr. Perevoznikov asserts that his counsel failed to properly advise of him of the immigration consequences of his plea, and thereby rendered ineffective assistance of counsel. For the reasons that follow, Mr. Perevoznikov's petition is denied.

## BACKGROUND

       Mr. Perevoznikov, a citizen of Kazakhstan, was indicted in October 2020 for his role in a smuggling operation that transported some $50 million worth of goods from the United States to Russia, in violation of federal export controls. *See* Redacted Indict., ECF No. 10; Presentence Investigation Report ¶ 9, ECF No. 146 ("PSR"). Mr. Perevoznikov's role in the operation was to obtain electronic devices, pack them in suitcases, and provide them to airport couriers who loaded them on outbound planes heading for Moscow. PSR ¶ 13. All told, Mr. Perevoznikov acquired and sent more than $1.5 million in electronics. *Id.*

       Mr. Perevoznikov was arrested on October 19, 2020 and ordered detained. ECF Nos. 25 & 26. At the time of his arrest, Mr. Perevoznikov was a conditional permanent resident of the United

States, PSR ¶ 64, and was under the supervision of Pretrial Services in the Eastern District of

Pennsylvania for a separate case, filed in 2015, also involving unlawful exports to Russia, *id.* ¶¶

13, 51. Mr. Perevoznikov retained private counsel, Lance Lazzaro, to represent him shortly after

the arrest through sentencing. *See* ECF Nos. 50 (first appearance) & 228 (emails terminating

representation post-sentencing).

### A. Petitioner's Plea

On June 28, 2021, Mr. Perevoznikov entered into a plea agreement, and pled guilty to one

count of Conspiracy to Fail to File Export Information, Smuggle Electronic Devices, and Defraud

the United States, in violation of 18 U.S.C. § 371. PSR ¶ 14. The plea agreement, which is attached

as an exhibit to the government's opposition to the instant motion, includes standard language

concerning sentencing, forfeiture, and various collateral consequences. Ex. 1, Gov't Opp'n to Mot.

to Vacate, ECF No. 294-1 ("Plea Agreement"). Of particular relevance is the following paragraph,

which sets forth the possibility of immigration consequences:

> The defendant recognizes that pleading guilty may have consequences with respect
> to the defendant's immigration status if the defendant is not a citizen of the United
> States. Under federal law, a broad range of crimes are removable offenses,
> including the offenses to which the defendant is pleading guilty. Removal and other
> immigration consequences are the subject of a separate proceeding, however, and
> the defendant understands that no one, including the defendant's attorney or the
> District Court, can predict with certainty the effect of the defendant's conviction on
> the defendant's immigration status. The defendant nevertheless affirms that the
> defendant wants to plead guilty regardless of any immigration consequences that
> the defendant's plea may entail, even if the consequence is the defendant's
> automatic removal from the United States.

*Id.* ¶ 13.

During the plea proceeding, I also discussed the substance and potential consequences of

the plea directly with Mr. Perevoznikov. *See* Ex. 2., Gov't Opp'n to Mot. to Vacate, ECF No. 294-

2 at 13–17 ("Plea Trans."). He indicated that he had read and discussed both the indictment and

the plea agreement with his attorney, and fully understood both. *Id*. at 6, 12–13.[1] I specifically asked Mr. Perevoznikov whether he understood that he would "be required to enter removal proceedings" and that "no one could tell [him] otherwise," including his lawyer, to which he answered "yes." *Id*. at 15. Based on these answers, and Mr. Perevoznikov's description of the conduct underlying his offense in his own words, I concluded that the plea was knowing, voluntary, and factually supported. *Id*. at 22.

### B.  Petitioner's Sentencing

Prior to sentencing, I received and reviewed submissions from the government and Mr. Perevoznikov's counsel, Mr. Lazzaro. In the latter submission, Mr. Lazzaro urged me to "consider the fact that [his client] will likely be deported to the Kazakhstan [*sic*] as a result of his conviction in this case," and stated that deportation "seems inevitable." ECF No. 174 at 2 ("Def.'s Sent'g Mem."). On September 21, 2022, I sentenced Mr. Perevoznikov to twenty-four (24) months, six of which I ordered to run concurrently with the sentence in the Pennsylvania case, followed by two years of supervised release. *See* Ex. 3., Gov't Opp'n to Mot. to Vacate at 11–12, ECF No. 294-3 ("Sent'g Trans."). I imposed, as a condition of supervised release, that he "abide by all instructions of immigration authorities" and refrain from "illegal entry into the United States." *Id*. at 11. On February 16, 2023, I issued an amended judgement to clarify the duration of the sentence in accordance with my pronouncement at sentencing. ECF No. 237.

### C.  Petitioner's Direct Appeal

On October 7, 2022, Mr. Perevoznikov filed a notice of appeal to the Second Circuit, arguing that Mr. Lazzaro was constitutionally ineffective because he did not emphasize the

---

[1] During the plea hearing, Mr. Perevoznikov confirmed that he was fully fluent in English. Plea Trans. at 3.

harshness of conditions at the Metropolitan Detention Center in Brooklyn and did not respond or object when I stated that imposing a fully concurrent sentence to his Pennsylvania case "would result in attributing no punishment, at all" to his conviction in this case. *See United States v. Perevoznikov*, No. 22-2638-CR, 2024 WL 1458660 (2d Cir. Apr. 3, 2024). The Second Circuit dismissed Mr. Perevoznikov's appeal and suggested that he raise his ineffective assistance claim in a section 2255 petition before this court. *Perevoznikov*, 2024 WL 1458660, at *2.

**D. Petitioner's Immigration Custody and Section 2255 Petition**

On August 26, 2024, Mr. Perevoznikov completed his term of imprisonment and was released to an Immigration and Customs Enforcement ("ICE") facility during the pendency of his removal proceedings. Gov't Opp'n to Mot. to Vacate at 6, ECF No. 294 ("Gov't Opp'n").

On September 26, 2024, I received his *pro se* motion to vacate his conviction under 28 U.S.C. § 2255, on the grounds that he received ineffective assistance of counsel. *See* ECF No. 292 at 5 ("Mot. to Vacate"). The government filed its response in opposition to Mr. Perevoznikov's motion on October 14, 2024. *See* Gov't Opp'n. I requested that the government supplement the record and contact Mr. Lazzaro. Mr. Lazzaro then submitted an affirmation detailing his representation of Mr. Perevoznikov in his criminal proceedings. *See* ECF No. 302.

## DISCUSSION

**I. Subject Matter Jurisdiction**

Section 2255 provides that a person "in custody" under a federal sentence may move before the sentencing court to vacate his conviction on the grounds that it was imposed in a manner that infringed on his Constitutional rights. 28 U.S.C. § 2255. In order to file a petition under 28 U.S.C. § 2255, the petitioner "must satisfy the jurisdictional 'in custody' requirement" at the time he files his petition. *United States v. Rutigliano*, 887 F.3d 98, 104 (2d Cir. 2018) (quoting 28 U.S.C. §

2255(a)). A defendant under supervised release qualifies as "in custody" for the purpose of the statute. *Okhio v. United States*, No. 12-CR-179, 2022 WL 595257 at *1 (E.D.N.Y. Feb. 28, 2022). The statute authorizing supervised release provides that "supervised release commences on the day the person is released from imprisonment[.]" 18 U.S.C. 3684(e). Generally, this means supervised release begins on the date that an individual is actually released from the custody of the Bureau of Prisons. *See United States v. Johnson*, 529 U.S. 53, 60 (2000). However, when an individual is transferred directly from federal to state custody to serve a subsequent sentence, supervised release commences on the date of "release by the state." *United States v. Freeman*, 99 F.4th 125, 128 (2d Cir. 2024).

Here, the government argues Mr. Perevoznikov is not "in custody" because "his term of supervised release has not yet started running." Gov't Opp'n at 6.[2] This assertion wrongly equates immigration detention with "imprisonment" for the purpose of tolling supervised release. I have held that an individual in ICE detention remains "in custody" for purposes of section 2255 while their term of supervised release runs. *See Dong Cai v. United States*, No. 13-CV-3617, 2013 WL 5934314, at *3 (E.D.N.Y. Nov. 1, 2013). Indeed, a court retains jurisdiction over a section 2255 petition where the petitioner remains subject to a term of supervised release even if the petitioner

---

[2] The government cites *Freeman* for the proposition that Mr. Perevoznikov's term of supervised release has not yet begun, presumably because he is still imprisoned. Gov't Opp'n at 6. Confinement in immigration detention, however, is not "imprisonment" for the purpose of section 3684. *See Hassoun v. Searls*, 427 F. Supp. 3d 357, 364 (W.D.N.Y. 2019), *vacated on other grounds*, 976 F.3d 121 (2d Cir. 2020); *United States v. Garcia-Rodriguez*, 640 F.3d 129, 132 (5th Cir. 2011). As the Fifth Circuit has explained, "it is clear under federal immigration law that administrative detention of an alien is not the same as imprisonment for a crime." *Id*. at 133. "If the transfer of an alien from BOP custody to ICE custody is itself a possible condition of supervised release, the resulting administrative detention by ICE cannot also be part of the alien's term of imprisonment." *Id*. at 133–34. The Second Circuit in *Freeman* expressly stated that its holding "is not at variance with the Fifth Circuit's interpretation of § 3624(e)" in *Garcia-Rodriguez*. *Freeman*, 99 F. 4th at 128.

has been deported. *See United States v. Inniss*, 746 F. Supp. 3d 10, 19–20 (E.D.N.Y 2024).[3]

Accordingly, I conclude that Mr. Perevoznikov's term of supervised release commenced on the date of his transfer to ICE detention, on August 26, 2024, and was ongoing at the time he filed the instant motion. Because he is "in custody" within the meaning of 28 U.S.C. § 2255, I possess subject matter jurisdiction to resolve the motion.

## II.    Standard of Review Under 28 U.S.C. § 2255

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may move to vacate, set aside, or correct his sentence. The Second Circuit has held that a "collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted). An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under section 2255 even if the petitioner could have raised the claim on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

A district court ruling on a section 2255 petition is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "A defendant seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.'" *Raysor v. United States,* 647 F.3d 491, 494 (2d Cir. 2011) (quoting *Puglisi v. United States,* 586 F.3d 209, 213 (2d Cir. 2009)). Whether a hearing

---

[3] An individual whose criminal sentence has fully expired before entering ICE detention, however, is not considered "in custody" for the purpose of section 2255, even if the detention is a collateral consequence of the conviction. *Abimobola v. United States*, 369 F. Supp. 2d 249, 252 (E.D.N.Y. 2005); *Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008).

is necessary is in part analogous to a summary judgment proceeding: a reviewing court must view the record and proffered evidence "in the light most favorable to the petitioner," and "[i]f material facts are in dispute, a hearing should usually be held, and relevant findings of fact made." *Puglisi*, 586 F.3d at 213. A court may consider the trial record, documents, exhibits, affidavits, and written interrogatories. *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003). Unlike summary judgment, however, a petitioner need only identify available sources of relevant evidence rather than obtain it, because there is no pre-motion discovery in a section 2255 case. *Puglisi*, 586 F.3d at 213–14.

A hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987). To warrant a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez*, 722 F.3d at 131. Unlike in civil cases, "a district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214; *see, e.g. Zhang v. United States*, 506 F.3d 162, 164, 169 (2d Cir. 2007) (defendant's claim that his guilty plea was involuntary because he was unaware of the deportation consequences was insufficient where the judge at the plea allocution put defendant on notice of the consequences). Indeed, in cases like this one, where the judge that tried the underlying proceedings is reviewing the section 2255 motion, "a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse

7

to the petitioner." *Puglisi*, 586 F.3d at 214. The Second Circuit has also written approvingly of the "intermediate step" of "requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001); *see also Puglisi*, 586 F.3d at 215 ("The intermediate step-between deciding the motion without the benefit of any supplemental materials and a full hearing with live witnesses avoids the delay, the needless expenditure of judicial resources, and the burden on trial counsel and the government.").

Because Mr. Perevoznikov's is appearing *pro se*, I construe his motion liberally and interpret it to raise the strongest arguments that it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

## III.    Ineffective Assistance Claims

Among the rights guaranteed to criminal defendants is the Sixth Amendment right to "effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment[.]" *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). To establish that counsel was constitutionally ineffective, the petitioner must satisfy the two requirements set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) ("[T]he [*Strickland*] two part-standard [is] applicable to ineffective-assistance claims arising out of the plea process.").

"Under *Strickland*'s first prong, the defendant must show that his lawyer's performance falls outside the 'wide range of professionally competent assistance.'" *Farhane v. United States*, 121 F.4th 353, 374 (2d Cir. 2024) (en banc) (quoting *Strickland*, 466 U.S. at 690). Under *Strickland*'s second prong—prejudice—"the defendant must establish 'a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. 375–76 (quoting *Strickland*, 466 U.S. at 694). In the context of a plea bargain, the defendant must demonstrate a "reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357, 364–65 (2017). "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Chhabra v. United States*, 720 F.3d 395, 406 (2d Cir. 2013) (quoting *Strickland*, 466 U.S. at 698).

Mr. Perevoznikov argues that his attorney, Mr. Lazzaro, was constitutionally ineffective for three reasons. First, and primarily, he states that Mr. Lazzaro did not provide clear information about the immigration consequences of the guilty plea. Mot. to Vacate at 5. Second, Mr. Perevoznikov states that Mr. Lazzaro did not pay adequate attention to medical problems that he faced in detention, which I construe as an argument that petitioner's counsel did not adequately argue for a downward departure based on his medical conditions at sentencing. *Id*. at 6. Third, he states that Mr. Lazzaro falsely promised that Mr. Perevoznikov's sentence in this case would run consecutively with his sentence in a different case. *Id*. at 7–8.

### A.  The Second and Third Claims

As an initial matter, Mr. Perevoznikov's second and third claims fail. After reviewing the record, including the plea and sentencing transcripts and petitioner's *pro se* submissions, I find that Mr. Perevoznikov has failed to demonstrate a colorable claim of ineffective assistance based on his counsel's failure to request a downward departure due to his medical problems. *Id*. at 6; *see* ECF No. 186 (letter requesting the court's assistance for a medical order); ECF No. 282 (motion to reduce sentence for compassionate release). Section 5H1.4 of the Sentencing Guidelines provides that a "[p]hysical condition … may be relevant in determining whether a departure is

warranted, if the condition … is present to an unusual degree" U.S.S.G. § 5H1.4. "An *extraordinary* physical impairment may be a reason to depart downward." *Id.* (emphasis added). The standards for a downward departure pursuant to § 5H1.4 are strict and generally require a showing that the Bureau of Prisons cannot accommodate the person's medical condition. *See United States v. Persico*, 164 F.3d 796, 806 (2d Cir. 1999); *United States v. Altman*, 48 F.3d 96, 104 (2d Cir. 1995). Mr. Perevoznikov submitted a letter *pro se* prior to sentencing that brought to my attention his medical problems. ECF No. 186. Counsel's failure to raise Mr. Perevoznikov's conditions did not prejudice him at sentencing because I would have departed *sua sponte* if I believed a downward departure was warranted. *See McEwan v. United States*, 279 F.Supp.2d 462, 465 (S.D.N.Y.2003) ("Had counsel explicitly requested a downward departure on the grounds petitioner raises, this Court would have denied that request, since there was no showing then and no showing now that the Bureau of Prisons is not fully equipped and capable of ministering to petitioner's medical needs."). Indeed, Mr. Perevoznikov was able to receive shoulder surgery on June 10, 2024, after he had been sentenced and while he was in custody. Mot. to Vacate at 6; ECF No. 282 at 2. Nor is there any indication that Mr. Perevoznikov's decision to enter into a guilty plea was affected by his counsel's decision not to bring medical issues to my attention. Accordingly, I reject Mr. Perevoznikov's claim of ineffective assistance of counsel for failure to seek a downward departure based on his physical condition.

Mr. Perevoznikov's third claim, regarding Mr. Lazzaro's alleged promise that Mr. Perevoznikov would receive a fully concurrent sentence, also fails to meet the *Strickland* standard. Mot. to Vacate at 7–8. "Counsel's performance may be deficient if the client is persuaded to plead guilty based on promises or assurances that the judge will impose a particular sentence." *Milios v. United States*, 813 F.App'x 646, 648 (2d Cir. 2020). Contradicting Mr. Perevoznikov's

characterization, Mr. Lazzaro submitted an affirmation that "[p]rior to entering into a plea agreement in Brooklyn, Anton Perevoznikov was advised that Eastern District Judge Ross would solely determine whether the sentences would run concurrent or consecutively." ECF No. 302 at ¶ 7. During the sentencing hearing, Mr. Lazzaro did request a fully concurrent sentence. Sent'g Trans. at 6–7. Even assuming that Mr. Lazzaro promised Mr. Perevoznikov that he would receive a fully concurrent sentence, and that such a promise would fall below the "objective standard of reasonableness" required of counsel, *Strickland*, 466 U.S. at 687–88, Mr. Perevoznikov's claim fails on the prejudice prong. Mr. Perevoznikov has made no argument or identified available sources of relevant evidence that he would not have accepted the plea agreement if he had known that there was a possibility that his sentences would not run concurrently. To the contrary, Mr. Perevoznikov confirmed at his plea hearing that no one had made any promises to him regarding his ultimate sentence. Plea Trans. at 18.

### B. Immigration Consequences

Mr. Perevoznikov's strongest claim is that Mr. Lazzaro failed to provide clear information about the immigration consequences of the guilty plea. In *Padilla*, the Supreme Court held that criminal defense attorneys have a "constitutional duty" to advise clients of immigration consequences if the guilty plea carries a risk of deportation. *Farhane*, 121 F.4th at 358. In *Padilla*, the defendant's attorney told him that "he did not have to worry about immigration status" when, in fact, the offense to which he pled guilty made deportation presumptively mandatory. *Padilla*, 559 U.S. at 359, 369. The Supreme Court "stressed that counsel's duty to advise her client about the risk of deportation applies whenever that risk exists, not solely when that risk is imminent or crystal clear." *Farhane*, 121 F. 4th at 375 (citing *Padilla*, 559 U.S. at 369). Where the "deportation consequences of a particular plea are unclear or uncertain," competent counsel must inform her

11

client that "pending criminal charges *may* carry a risk of adverse immigration consequence." *Padilla*, 559 U.S. at 369 (emphasis added). "But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id*.

### 1. Deficient Performance

Under *Padilla*, the defendant must show that counsel's advice (or lack of advice) about immigration consequences were so erroneous, misleading, or unclear as to be unreasonable. *See Chhabra*, 720 F.3d at 407–08; *De Goorte v. United States*, No. 22-2324, 2023 WL 7293269 at *3 (2d Cir. Nov. 6, 2023). "[F]alse assurance that [a] conviction [will] not result in [] removal" when the law clearly dictates that removal is presumptively mandatory constitutes incompetence. *Padilla*, 599 U.S. at 368; *see also United States v. Al Halabi*, 633 F. Appx. 801, 803 (2d Cir. 2015) (same). However, counsel need not use precise, legal language when making its advisement; describing the risk as "very likely" rather than "presumptively mandatory" is adequate to put the defendant "on notice." *De Goorte*, 2023 WL 7293269, at *3.

Here, Mr. Perevoznikov's motion states that Mr. Lazzaro failed to give him a "clear answer" as to whether the offense to which he pled constitutes a crime involving moral turpitude ("CIMT"), Mot. to Vacate at 5, for which he could be deported under 8 U.S.C. § 1227(2)(A)(i) or § 1227(2)(A)(ii).[4] Mr. Perevoznikov explains that he specifically asked Mr. Lazzaro about paragraph thirteen of his plea agreement, which addresses the possible immigration consequences

---

[4] 8 U.S.C. § 1227(2)(A)(ii) states that a noncitizen "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct … is deportable." At the time of his guilty plea, Mr. Perevoznikov was serving a sentence for a conviction involving Conspiracy to Unlawfully Export Defense Articles without a License, in violation of 18 U.S.C. § 371, following prosecution in the Eastern District of Pennsylvania. Gov't Opp'n at 4. While the outcome of Mr. Perevoznikov's ongoing removal proceeding is not certain, pleading guilty to the one count of 18 U.S.C. § 371 at issue in this motion likely rendered Mr. Perevoznikov removable from the United States.

of the plea, and that all Mr. Lazzaro said in response was "Anton you will be fine, don't worry." Mot. to Vacate at 5.[5] The motion then states that Mr. Perevoznikov asked his counsel if the offense is a "crime involving moral turpitude" and that he "never got a clear answer yes or no." *Id.* Mr. Perevoznikov's motion states that it was important to him at the time that he not plead guilty to an "offense[] which is considered a CIMT." *Id.*[6]

Mr. Perevoznikov's trial counsel submitted an amended affirmation on March 11, 2025. *See* ECF No. 302. He writes: "Before pleading guilty, Mr. Perevoznikov and I had multiple discussions regarding the potential immigration consequences on Mr. Perevoznikov's immigration status. I specifically advised Mr. Perevoznikov that he faced a significant risk of being deported if he were to plead guilty pursuant to the government's plea agreement." *Id.* ¶ 4. Mr. Lazzaro states

---

[5] The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, lists grounds for deporting a noncitizen with criminal convictions. The specific deportation consequences that attach to them can vary, ranging from being subject to likely deportation to being subject to mandatory deportation. The two most significant categories are "crimes involving moral turpitude" and "aggravated felonies." *See* § 1227(2)(A)(i), (iii). Crimes that would constitute a crime of moral turpitude are determined by case law, *see, e.g., Jordan v. De George*, 341 U.S. 223, 229 (1951) (holding conspiracy to defraud the United States of taxes on distilled spirits to be a crime of moral turpitude), while crimes that constitute aggravated felonies are defined in the INA, though the bounds of those definitions often require judicial clarification, *see, e.g., Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013) (holding that a state law criminalizing "the social sharing of a small amount of marijuana" did not amount to an aggravated felony). The INA provides that a noncitizen who has been convicted of an "aggravated felony" may be deported from this country, 8 U.S.C. § 1227(a)(2)(A)(iii).

[6] It appears that the crime he pled guilty to may also be an aggravated felony, which would make Mr. Perevoznikov's removal after conviction even more certain. The INA defines an aggravated felony as "an offense that … involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The Supreme Court has held that a reviewing court ought to examine the record of conviction rather than the statutory elements alone to determine if this $10,000 requirement is satisfied. *Nijhawan v. Holder*, 557 U.S. 29, 32 (2009). Mr. Perevoznikov consented to the entry of a forfeiture money judgment in the amount of $100,000 as proceeds he personally obtained, directly or indirectly, as a result of his violation of Count One of the indictment. Plea Agreement at 6.

that "[b]ased upon out [*sic*] discussions, Mr. Perevoznikov was well aware that a guilty plea would subject him to deportation." *Id.* ¶ 5.

Mr. Perevoznikov filed a letter dated October 21, 2022 that communications between him and Mr. Lazzaro had broken down. ECF No. 228. The letter, which excerpts correspondence between petitioner and counsel, does not raise any disagreements regarding the sufficiency of legal counsel provided about the immigration consequences of Mr. Perevoznikov's guilty plea. Instead, Mr. Perevoznikov appears primarily concerned with the length of his sentence, ECF No. 228 at 1. Understood in the light most favorable to the petitioner, Mr. Perevoznikov's apparent lack of concern regarding the near certainty of his impending immigration detention and deportation suggests that he was possibly misinformed by counsel that such confinement and removal was looming.

Taking Mr. Perevoznikov's characterization as true, an assurance from his defense counsel that he "w[ould] be fine" with regard to immigration consequences is an affirmative misrepresentation that would constitute unreasonably incompetent representation. Mot. to Vacate at 5; *see United States v. Rodriguez-Hilario*, 699 F. App'x 30, 31 (2d Cir. 2017) ("where deportation is mandatory, it is objectively unreasonable post-*Padilla* to fail to inform a client that deportation is certain"); *Whyte v. United States*, No. 08-CR-1330, 2015 WL 4660904, at *4 (S.D.N.Y. Aug. 6, 2015) ("Regardless of whether the immigration law is succinct and straightforward, if defense counsel provides 'false assurance that [a defendant's] conviction [or guilty plea] would not result in removal,' the defense counsel has not provided objectively reasonable representation." (citing *Padilla*)); *Gomez v. United States*, No. 10-CV-1886, 2013 WL 66080, at *5 (E.D.N.Y. Jan. 4, 2013) ("Gomez's allegations, if true, demonstrate 'affirmative misrepresentation[s] by counsel as to the deportation consequences of a guilty plea' rather than

simply a failure to inform."); *Rodriguez v. New York*, No. 16-cv-5615, 2017 WL 1655217, at *9 (E.D.N.Y. May 2, 2017) (collecting cases). Moreover, Mr. Perevoznikov's plea carried clear immigration consequences. "[F]alse assurance that [a] conviction would not result in [a defendant's] removal" is clearly unreasonable "when the deportation consequence is truly clear." *Padilla*, 559 U.S. at 368–369. When, as in this case, the immigration statutes provide for mandatory deportation, a petitioner may be "misled" where the attorney informs his client that he "could" rather than "would" be subject to deportation. *Superville v. United States*, 284 F. Supp. 3d 364, 366 (E.D.N.Y. 2018), *aff'd*, 771 F. App'x 28 (2d Cir. 2019).

However, I do not need to resolve whether Mr. Lazzaro provided adequate representation of Mr. Perevoznikov and hold an in-person evidentiary hearing. This is because Mr. Perevoznikov's claim would nevertheless fail *Strickland*'s prejudice prong. *See Superville*, 771 F. App'x at 32 (affirming denial of section 2255 claim for lack of prejudice). The submission from Mr. Lazzaro, taken together with the rest of record, is sufficient to support dismissal of the petition. *See Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (finding that in-person hearing was not required after, at the district court's request, the record was supplemented by a detailed affidavit from trial counsel that contradicted petitioner's version of the events).

    2.  Prejudice

With respect to the second prong of the *Strickland* test, a petitioner must demonstrate prejudice with respect to his decision to plead guilty. In the immigration context, the defendant must establish that had he known the true likelihood of deportation, the outcome would have been different. *Farhane*, 121 F.4th at 376. Generally, this means that the defendant must show a "reasonable probability" that he would have gone to trial or "could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Kovacs v.*

*United States*, 744 F.3d 44, 52 (2d Cir. 2014); *see also Doe v. United States*, 915 F.3d 905, 910 (2d Cir. 2019). As discussed below, Mr. Perevoznikov has not demonstrated prejudice.

Here, Mr. Perevoznikov "has not asserted that he is innocent of the crimes to which he plead guilty, nor has he presented proof that he could have succeeded in avoiding conviction following a trial." *Guzman v. United States*, No. 11 CIV. 2433, 2011 WL 6097128, at *6 (S.D.N.Y. Dec. 7, 2011). Based on the record and Mr. Lazzaro's motion, there appears to be no reasonable probability that Mr. Lazzaro could have negotiated a plea or secured a result at trial that did not affect Mr. Perevoznikov's immigration status. *See United States v. Seepersad*, 674 F. App'x 69, 71 (2d Cir. 2017) (finding that "[e]ven assuming arguendo that … counsel wrongly advised him that he would not be deported if he was sentenced to less than a year" that petitioner could not demonstrate requisite prejudice because the record made clear that he did not expect his sentence to be less than a year).

Courts in this Circuit have held that a "defendant fails to satisfy the 'prejudice prong' of *Strickland* where his attorney fails to inform him of the potential for deportation but the deportation consequences are otherwise addressed in the plea agreement or allocution." *Marte*, 952 F.Supp.2d at 540 (collecting cases); *see also Superville*, 771 F. App'x at 32 (affirming denial of ineffective assistance claim for lack of prejudice, "particularly in light of the three other warnings [petitioner] received" of the immigration consequences, including in the plea agreement and before the magistrate and district court judges). Mr. Perevoznikov was advised of the immigration consequences by the language of the plea agreement and by the court at his plea allocation. Even when these immigration consequences were made known to Mr. Perevoznikov on the record, he did not request to withdraw his guilty plea. Therefore, Mr. Perevoznikov has failed to establish a

reasonable probability that he would have rejected the plea if he had received different advice from defense counsel prior to his guilty plea.

In the plea agreement, Mr. Perevoznikov represented that he read the entire agreement, discussed it with his attorney, understood the agreement and its terms, and entered into it knowingly and voluntarily. Plea Agreement at 10. The Plea Agreement specifically set forth that Mr. Perevoznikov wanted to plead guilty regardless of any immigration consequences, including "defendant's automatic removal from the United States":

> [T]he defendant understands that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

Plea Agreement ¶ 13.

Mr. Perevoznikov also confirmed that he understood the potential immigration consequences of the Plea Agreement at his plea hearing, including that he would be subject to removal from the United States. ECF 294-2, Ex. B, Plea Trans. June 28, 2021. at 15:

> The Court: Do you understand that you will be subject to -- you will be required to enter removal proceedings --
>
> The Defendant: Yes.
>
> The Court: -- as set forth in the agreement?
>
> The Defendant: Yes.
>
> The Court: And do you understand that that is so certain that no one could tell you otherwise, not your lawyer, not the prosecutor, not me, because that will happen?
>
> Defendant: Yes.

17

Mr. Perevoznikov also testified at his plea allocution that he had reviewed the indictment and the plea agreement with his attorney, that his attorney had explained those documents to him, and that he understood those documents. *Id*. at 12–15. A defendant's testimony during his plea "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

My statements to Mr. Perevoznikov that he would, with certainty, suffer immigration consequences and enter removal proceedings by entering a guilty plea counterbalanced any possible defective representation from his defense counsel. *See Marte v. United States*, 952 F. Supp. 2d 537 (S.D.N.Y. 2013) (defendant fails to satisfy *Strickland*'s prejudice prong "where his attorney fails to inform him of the potential for deportation but the deportation consequences are otherwise addressed in the plea agreement or allocution"); *Ottenwarde v. United States,* No. 12 Civ. 6537, 2013 WL 1242632, at *6 (S.D.N.Y. Mar. 28, 2013) (denying ineffective assistance claims where petitioner, during his plea allocution, "repeatedly confirmed that he understood his conviction could be used to remove him from the United States."); *Hill v. United States*, No. 11-CR-145, 2014 WL 104565, at *9 (S.D.N.Y. Jan. 7, 2014) (same). It is clear from the transcript of the plea colloquy and the record that Mr. Perevoznikov did not suffer prejudice, even if his counsel failed to reasonably inform him of immigration consequences, because my statements put him on notice of the certainty of his removal prior to his entry of a guilty plea and he nonetheless pled guilty.

Mr. Perevoznikov's case is distinguishable from the Supreme Court's decision in *Lee v. United States*, 582 U.S. 357 (2017). Although the Court concluded that the petitioner in that case had established prejudice despite the district court's warning during the plea colloquy that a conviction "could result in your being deported," petitioner's counsel "specifically undermin[ed] the judge's warnings [during the proceeding], which the defendant contemporaneously stated on the record he did not understand." *Id*. at 369 & n.4. In *Lee*, the evidence showed that the defendant's counsel incorrectly advised the defendant that they could not be deported if deportation was not included in the plea agreement. *Id.* at 362. Petitioner and defense counsel agreed that avoiding deportation was the primary driver of the defendant's guilty plea. *Id.* The defendant's counsel, accepting responsibility for any possible faulty representation, testified that "if he had known [the defendant] would be deported upon pleading guilty, he would have advised him to go to trial." *Id.* By contrast, Mr. Perevoznikov's counsel maintains that "Mr. Perevoznikov was well aware that a guilty plea would subject him to deportation." ECF No. 302 ¶ 5.

Indeed, Mr. Perevoznikov's sentencing memorandum provides additional record evidence that his counsel held the position that his client was likely subject to deportation. ECF No. 174 at 2 (arguing that Mr. Perevoznikov's sentence should consider "the fact that he will likely be deported . . . as a result of his conviction in this case" and that "Mr. Perevoznikov pleaded guilty to a deportable offense and it seems inevitable that he will be deported"). As Mr. Perevoznikov made no motion to withdraw his guilty plea, the language of his sentencing memorandum suggests that he took immigration consequences into consideration when pleading guilty. *See United States v. Dikshit*, No. 21 CR. 760 (CM), 2022 WL 13835072, at *2 (S.D.N.Y. Oct. 20, 2022) (finding that petitioner could not have been unaware of the possibility of deportation when his sentencing memorandum raised deportation as a factor weighing in favor of a lighter sentence).

Petitioner's case is also distinguishable from *Whyte v. United States*, where defense counsel and the court were expressly unsure if immigration consequences would result from the charges that the defendant pled guilty to. No. 08-CR-1330, 2015 WL 4660904, at *3 (S.D.N.Y. Aug. 6, 2015). Indeed, the *Whyte* court discussed the hypothetical scenario—our scenario here—in which the court issues a warning that a guilty plea would subject the defendant to removal without remedy. In that case, "[the defendant's] prejudice would have been cured by the Court's advice because the Court's statement of the law would have superseded his attorney's erroneous advice." *Id.* at *10.

It is "within the district court's discretion to determine the scope and nature of a hearing." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011). In this case, I directed the Government to respond to the assertions contained in Mr. Perevoznikov's motion, and it reached out to Mr. Perevoznikov's former counsel to supplement the factual record. Mr. Lazzaro responded with a detailed and credible affidavit which is supported by various facts in the record that contradict Mr. Perevoznikov's assertions. *See Chang*, 250 F.3d at 85–86 (finding district court's decision to supplement record with affidavit from trial counsel sufficient to support dismissal without live hearing); *Gomez v. United States*, No. 10-CV-1886, 2013 WL 66080, at *7 (E.D.N.Y. Jan. 4, 2013) ("[T]he Second Circuit has made clear that no hearing is required where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief; or (2) the documentary record renders a testimonial hearing unnecessary."). As Mr. Perevoznikov has failed to establish that he has a plausible claim of ineffective assistance of counsel, I do not need to hold an in-person evidentiary hearing to deny his motion. *See* 28 U.S.C. § 2255 (hearing not required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

**CONCLUSION**

For the reasons set forth above, petitioner's application for relief pursuant to 28 U.S.C. §

2255 is denied.

SO ORDERED.


                                                    /s/_____
                                                    Allyne R. Ross
                                                    United States District Judge

Dated:          March 25, 2025
                Brooklyn, New York